Case number 17-1009, Dennis Brenay Sr. et al. v. Michael Schartow et al. Oral argument not to exceed 15 minutes per side. Thomas Loeb for the appellant. You may proceed. Good morning, Your Honors. My name is Thomas Loeb. I represent Mr. and Mrs. Brenay Sr. I am asking for five minutes to reserve for rebuttal. All right. This case presents the question whether police officers can reach over the threshold of a home when they conduct a walk and talk to pluck someone out and arrest him without a warrant. That's what happened in this case. I will refer to my client as Sr. and his son as Jr. because the police were there to see Jr. on a personal protection order violation. This was presented to Officer Sierras from Bay City earlier that Saturday morning. Can I ask you a question? In your brief, you referenced Officer Schartow in the heading, but you only refer with regards to this claim. I'm not talking about the malicious prosecution to Officer Sierras. Are you pursuing this against Officer Sierras alone? Because I didn't see, maybe you can point me to argument regarding Officer Schartow. In terms of the entry, it is my understanding that Officer Schartow was claiming that he entered to deal with whatever Officer Sierras was dealing with, and he would not have entered. In my experience handling cases like this, and having even represented police officers, what appears to have happened here is that when Sr. was allowed... I understand what happened. I'm sorry. My question, and I'm sorry for not being clear, is are you pursuing Officer Schartow on the entry claim or just the malicious prosecution? I'm pursuing him on the entry claim, but I recognize that the exigency might give him qualified immunity on that. Because he entered to assist another officer. Yes, sir. And it's, I think, beyond dispute that if an officer is struggling with someone, another officer may come to his aid no matter where it is, correct? They don't have to stop and watch an officer get shot inside a house. I would agree with that. Okay, so as to your other claim, it seems to me that it comes down to one question. And let me... So as to Sierras, Stoneburner, the Sixth Circuit case, seems to make clear that it has to be pursuit, correct? For the officer to get qualified immunity, he has to be in pursuit. Yes, but this is not a high-pursuit case. Well, so are you familiar with the Supreme Court case of Santana? Yes, sir. Okay, so what's different about Santana? There's several things different about Santana. First of all, in the Santana case, which was not only a high-pursuit case, but the exigency that was presented and specifically referenced in Santana, was the concern that the evidence, the heroin and the marked money could be destroyed. Right. That was a major part of it. That's a legitimate... Number two, in Santana, Mama Santana was standing in the threshold. The court makes that crystal clear in footnote one when they reference how one officer testified if Mrs. Santana would have stepped one step forward, she'd be outside, one step inside, she'd be inside. In this case, the officers knock on the door, and Mrs. Brené Sr. summons her husband. Sr. comes to the door, and then Jr. is summoned to the front door, and he talks with the officers at various times. It's described as perhaps two feet behind the threshold and at one point within inches of the threshold. There is absolutely no question, however, that the officer reached in to grab him. And this happened after Sr. turned to Jr. and said, okay, that's it, call your lawyer. Can I give you my understanding of a version of the facts? And accept my version is true for the minute and tell me if there's a problem. Officer comes to the door. Brené Jr. comes to the door. Right? We know both of those things happen. Officer says after some discussion, you're under arrest. Brené Jr. turns to go back into the house. Would the officer be entitled to reach in and grab him? Is Jr. outside or in the threshold or standing within? He's standing within the vestibule. No, he would not be allowed. And that was referenced in United States v. Morgan, a 1984 case that this circuit ruled on, where it specifically adopted a Ninth Circuit holding stating at page 1166, we agree with the Ninth Circuit that the important consideration in this type of case is the location of the arrested person and not the arresting agent that determines whether an arrest occurs within a home. Right. But so take my version. He's in the vestibule. I say he's under arrest, and he turns to go away. You're saying the officer can't reach in and grab him. Yes, sir. I'm saying that. I'm also saying that the United States Supreme Court has so held. In what case? In Kentucky v. King. It's referenced in Florida v. Jardines when they're talking about – Well, Jardines is the – It's a Kirtlewich case. Yeah. Jardines is a different case. It is a different case. But one of the cases I relied on in my answer to the motions for summary judgment and in my appellate briefs is Cummings v. City of Akron. And there's a quote that I think should be referenced, which is, General statements of the law are not inherently incapable of giving fair and clear warning. And in some instances, a general constitutional rule already identified in the decisional law may apply with obvious clarity to the specific conduct in question. Well, the Supreme Court overruled that implicitly last year in White v. Pauly. I disagree, sir. Even in White v. Pauly, because they referenced the Hope v. Pelser and United States v. Lanier. And at the time that Cummings v. City of Akron – Let me ask you, do you need a general principle to get this case reversed? Or can you get it reversed on the specific principle? Because if you need a general principle, in my mind, you lose. If you have the specific under Stoneberner and its progeny or the cases before it, then you have a legitimate shot. Then we start quibbling on how general is general and how specific is specific. Well, Stoneberner is specific. Even Hope v. Pelser and United States v. Lanier make it clear that if fair notice is given, that's sufficient. I believe that Judge Ludington was reaching in this case to come up with distinctions on how this case is more like Santana than like Payton v. New York, referencing to the fact that in Payton v. New York, they used crowbars. I will tell you that that's the first time I've seen any reported case citing to Payton v. New York pointing that fact out as some kind of distinguishing factor in the Payton case. In this case, while I do believe that Smith v. Stoneberner is very helpful to my client and might be the case that this panel turns on, I do want to point out that even though these events occurred in 2013, that Smith v. Stoneberner was decided on May 10th, more than six months before the November 30th incident in my case. So this was clearly established law as far as I'm concerned. And there are other cases. I mean, one of the reasons I cited the judge to his own opinion in the Tobias case is because he had all these marvelous quotes about how the protection of the home under the Fourth Amendment is the first among equals and historically how even Silverman v. United States decided in 1961 made it clear, at least to my reading, that even an intrusion of inches into the home can violate the Fourth Amendment. In Silverman, the government agent put a listening device within just inside one of the vents for either air conditioning or heating. And they held that that was a violation. Counsel, before you run out of time, can you talk about the malicious prosecution claim? Yes, the malicious prosecution. I believe I've established all of the conditions required under Sykes v. Anderson. I was the trial attorney in that case. I represented co-plaintiff Urquhart. I don't quite see how you've got a claim here based upon your client's own admission. I mean, your client admitted that he allowed the screen door to shut, whether it was intentionally done or whether he just let his hands go. He admits that he shut the front door. And then he also admits that he grabbed someone during the incident, and it may have been the officer. So shutting the door on the officers as they're attempting to arrest the son and grabbing the officers as they're trying to arrest him, why isn't that at least probable cause for resisting and obstructing? Several reasons. One, under Kentucky v. King, he has the right to close the door and end the conversation. That's number one. Number two, the summary judgment standard, as you know, is supposed to take the facts in the light most favorable to the plaintiff. I'm taking his own facts, that he shut the door, which obstructed the arrest. Whether the arrest was legal or not, he's obstructing the arrest. He's hindering the arrest. And then I think he also may be doing it by grabbing the officer. He testified that he got knocked around and lost his balance, what was implicit to everybody in this case. Let me ask you this. If it's a he said, she said case, in every case where the officer says person X did X, and the defendant says I didn't, in this case it's not the defendant, but the claimant says I didn't do X, would you have a malicious prosecution case? Officer says one version. Plaintiff says another version. Take the facts in the light most favorable to the plaintiff. Officer secures an arrest warrant based upon the officer's view of the facts. Would you in every single case like that have a malicious prosecution case that had to go to the jury? I think I'd have to prove more than that, but that's not what happened here, number one. Number two, may I grab some water? Can you answer my question first, and then you can do whatever you want. I'm having trouble talking because I'm on medication. Oh, are you all right? Sure. What has to be shown, as you know, for a malicious prosecution case, it's essentially a Franks v. Delaware civil action where the affidavit or the supporting documents, if it's claimed that something was stated falsely or with reckless disregard, we remove it. If something was omitted, we put it back in, and then we determine whether there was probable cause. Under Michigan law, an accidental touching is not a resisting and opposing. In a heated event, which often these encounters are, why can't an officer reasonably perceive that what happened was obstruction? And my question is, if we have a he said, she said case between an officer and an individual where there's nothing else, is that always subject when you take the officer's versions out of the affidavit, you're always going to have the basis for a malicious prosecution case to go to a juror, correct? Am I right or wrong? Well, you're certainly right on material facts in dispute, if it's considered a material fact and it doesn't take much. I think this court decided a case called Shreve versus a, I think, a Kentucky court. It doesn't take much. What does it take? I mean, you admit there's a threshold that you don't get to a jury just because you make an allegation that there was a deliberate falsehood. Do you? I mean, or do you? On this, on these facts in this case, the statement that was argued and made in both of the police reports is that Mr. Brunet and another officer said, and his wife also was pushing the officer away from the son. At one point they described it as sort of like a tug of war. Mr. Brunet has health issues that anybody seeing him would be recognized in a nanosecond. I mean, I say take that out of the police report. I think there's still enough for probable cause of resisting an obstruction by closing the door and grabbing the officer when he's trying to effectuate the arrest. There, I don't see how you have any evidence that the police deliberately injected falsehoods into the report. All you have is is a blanket allegation unsupported by any evidence. And I think your argument is I have a blanket allegation. I can go to the jury. Well, that's not the way it works. That's not what I'm saying, sir. What I'm saying. Well, what evidence do you have to support that? It's it's it's it's a deliberate falsehood. I'm sorry, deliberate deliberate falsehood. Deliberate falsehood is that that senior and his wife were tugging at Junior and trying to prevent the officers from coming in. And it's not reasonable their interpretation of the of the events. No, sir, it's not totally unreasonable. It's that he had a right to close the door in the first place. He could have been rude and crude and you can ask you a separate question, which is just take the grabbing of the arm. Everyone agrees that occurred. If you're trying to effectuate arrest and someone grabs your arm, is that sufficient for an officer to seek an obstruction charge? Not if I'm standing in my house, not inside my house. And you're reaching in without a warrant, not any more than pointing a gun at me and ordering me to. Or in hot pursuit, if there's exigent circumstances, I mean, other things going on here. If there was hot pursuit, if there was an exigent circumstance, that would be an exception to the war. You haven't mentioned what might be your one of your strongest cases in your favor here, at least in this most recent exchange. It's Peyton versus New York from the Supreme Court that says that the threshold of the entrance to the home is a firm line to that has to be observed, except for exigent circumstances. And I take it the argument here is that there were no exigent circumstances that would have derogated the holding in Peyton. I believe there was no exigent circumstance whatsoever. Officer Sierras made it very clear in his testimony, both at trial and in his deposition, that he intended to go to the house to make this arrest. This was a ruse to get him to the front door. And he was originally invited to come outside, and Senior and Junior both declined because they were in their stocking feet. Does Senior have standing to claim that the arrest of Junior was illegal? Senior has no, and he's not. But that's your argument. Your argument against probable cause for resisting obstruction is that there was an illegal arrest of Junior. But if Senior doesn't have standing, I don't see how that's a defense. It was a legal entry, sir. I mean no disrespect. But my argument is that when the officers entered illegally, that's what Senior did. Okay, Senior has a 1983 claim for damages for the illegal entry, but that's it. But I think he could still be prosecuted for obstructing even an illegal arrest if he doesn't have standing to challenge the illegal arrest, that's all I'm saying. A different way of asking it, if I may, may I judge? Sure. If they come in improperly, does that give the occupants of the house the right to interfere in police business? In other words, can they do anything they want once those officers come into their house? And it's a question, there's a reasonable question, let's say, that should go to the jury about whether they came in properly. Does that give license to do whatever you want? I don't believe it gives license to do whatever you want. I don't think I'm arguing for whatever you want. What I'm arguing for here is that to charge Senior with resisting and opposing on the facts in this case, the appellees have mentioned, well, he asked questions. Well, that violates Houston v. Hill, the First Amendment, and other cases that this court has referenced. Then the door closing or touching somebody. A reasonable officer would have recognized that maybe because of Senior's disabilities that he was knocked over. And instead, what these officers did in their joint police reports is conjure up a story of actively getting involved in preventing the officers from grabbing Mr. Clay. Now, under Michigan law, People v. Marino was in play, and that would have given Senior the right to slam the door shut, Kentucky v. King as well, and if the officers came in to grab him, he would have had a right to resist. And while Marino, on its face, when you read the opinion, talks about common law and Michigan law, it's pretty clear from one of the dissents that the Fourth Amendment was in play in the Marino case as well. So this is a Supreme Court case that allows civilians in their own home to stop the conversation. And in this case, Mr. Brené Senior's explanation was that he turned, told his son, call your lawyer. At one point, he describes how he let go of the door and the door closes. I think the storm door closes pretty quickly. While the officers may have felt insulted, Kentucky v. King and other cases, including Welsh v. Wisconsin, is a case that I think gives fair notice to these officers, and particularly in Sierra. So, no, I believe that malicious prosecution is shown here. I don't think that... You understand you're, and I don't want to ask too many, but you understand you're mixing apples and oranges with those cases. I'm sorry, no, I don't. Okay, Welsh and all those cases relate to the entry, and what you're trying to say is as soon as the officers illegally enter, that the civilian gets to determine whether that entry was illegal and obstruct, and they live with the peril of that decision. No, sir, I'm not arguing that. But you understand where it goes, right? Because if what you're saying is if an officer, in hindsight, the court determines, which I think you've got a good argument, that they illegally entered the home, then you can always bring, you can never bring an obstruction charge. In other words, then it's free game. And so civilians in the heat of the moment are making a determination whether the officer legally or illegally entered the home, and if they illegally entered, they can obstruct. And for a court to say that makes it very perilous. We can handle the officer's mistakes on the back end. But what you're asking us to do is use those cases to countenance civilians obstructing with law enforcement. Respectfully, what I'm asking is that the trial court should have taken the facts in the light most favorable to plaintiffs and if the facts showed that he inadvertently came into contact with someone and Senior makes it clear he's not even sure whether it was an officer or someone else, that that goes into the equation of whether there was probable cause to believe there was obstruction. This circuit has decided similar cases, I think, two different times, and I cite them in my briefs on exactly this issue. So that's where I think the mistake was made. I believe that Judge Ludington was making fact findings when he was saying about what no reasonable juror would see. I know I'm running over. Yeah, we've run way over. We should stop at this point. You'll have your rebuttal time. Thank you. Thank you. Good morning to the panel. Douglas Curlow appearing on behalf of Troy Sierras. The co-appellant and I have agreed to split the 15 minutes evenly, seven minutes, 30 seconds each, although we both hope to avoid going that far. I just want to highlight that what this case is really about, and I think the apples and oranges thing is right because we keep jumping between senior and junior and senior and junior. The real issue here is the question of retreat and what does a retreat from a known arrest allow an officer to do. Well, isn't there a dispute of fact as to when the officer announced he was under arrest? And if there is, because Stonebrenner is pretty clear, you can't go in absent exigent circumstances, and there's two exigent circumstances that have been identified, hot pursuit or destruction of evidence. There's no allegation about destruction. So we narrow it down to hot pursuit. And your best argument is he has to announce, then Brene, Jr. has to retreat, then he has to enter. And there's a dispute as to that because Brene, Sr.'s wife says, didn't say anything. The officer himself in his testimony is unclear about whether he announced first or he reached in first. And so why shouldn't a jury decide that? Because the testimony by Brene, Jr. is the key testimony here. Remember, we have to focus on Brene, Jr. was the retreater. What did Brene, Jr. know? And Brene, Jr., his testimony, and I have the specific pages that are in the brief, I think it's 49, 66, 67, something like that, specifically said, I understood I was under arrest. So he knows. Remember, Sierras only went to arrest Jr. Sierras' report after the fact only identifies Jr. as a suspect. Sierras' focus was on Jr. He was talking to Jr. Jr. understood from Sierras that he was being arrested. And then at least to the objective perceptions of the officers, it looked like Jr. was either retreating or being pulled in. But somehow he was trying to get away. After Jr. concedes, he understood that he was being asked to go with the officers under arrest for a people's violation. Trying to get away from what? He's in the house already, right? Right. So all he's doing is he's turning around. Are you saying he has an obligation to exit his own house so he can be arrested? Is that what you're saying? I think so. What authority do you have that someone who is in the safety of his own house has an obligation to go outside the house so he may be arrested? What authority? It's a question of does he have to go outside the house to be arrested. And the question is whether the officer can then reach in and get him once we have these circumstances of an announced arrest, an understood arrest, and then an apparent retreat. Is that what Stoneburner allows? The officer to reach in and grab somebody, bring them out, and arrest them? Is that what it holds? Before I would go to Stoneburner, I'd look at Santana first. Well, no. Just tell me about Stoneburner. Well, remember, in Stoneburner— I mean, it's the same case, isn't it? Right. No, as I look at Stoneburner, there was no admission by the plaintiff that they had understood they were under arrest. Remember, there were actually two entrances. The one, first they'd been told, wait on the porch, but he'd stroll in after them anyway. Then they're talking to the plaintiff outside, and then the plaintiff goes back inside, and that's when they enter that second time, which was the problem in the case. But there was no indication that there was any testimony from the plaintiff or any other evidence that there had been an acceptance by the plaintiff that I had been told and knew I was under arrest. And I think that's the critical distinction in the Stoneburner case and why we have to look back at the Santana case. If you're told you're under arrest, then the officer can come in there and grab you and pull you out. Because the question set out by Santana is, is there a known arrest and then is there a retreat from the arrest? Let me give you the officer's version. He said, before you announced that he was coming with you, the officer said he started to turn to leave. Mr. Brunais, Sr. said that's enough, we're done. Mr. Brunais, Jr. started to turn to leave to retreat back in the house. I told Brunais, Sr. he's coming with me. So he's already going back, which he's totally entitled to do. The officer's coming to someone's house, talking to them through the vestibule. He's apparently a few feet back. He's nodding the doorway like Santana. He says, look, I'm done with you. I'm turning to leave. And then the officer says you're under arrest. A reasonable jury could view those facts and say, whoa, whoa, whoa. There's no pursuit here. He had already turned to leave before the officer said anything. And that's the officer's own testimony. But we're not relying on the officer's testimony. I'm relying on the Brunais, Jr. testimony. But I get that. But Brunais, Jr. is not the plaintiff here. So it's not like an admission. There's a dispute. That's true. Brunais, Sr., his wife, and the officer say he retreated before I told him. And only Brunais, Jr. says, no, he might have told me. Why shouldn't a jury decide that? Why isn't that a disputed issue of fact? Because the issue is we have to focus on Brunais. He was retreating from what he recognized to be an arrest, and that makes it proper for the officer to grab him. But, no, no, it's not in his perception. It's an objective standard. It's not subjective. Otherwise, officers could never go in someone's house, because everyone says subjectively. It's an objective standard. Objectively, can an officer go in? Objectively, is he in hot pursuit? I mean, there's no way this is a subjective standard. No, it's certainly not a subjective standard. In Michigan, it would be. It's not at the federal level. You don't want it to be subjective. Go ahead. Counsel, under your theory, I mean, you're saying it's okay to grab him and bring him out. What if he was beyond grabbing distance? Under your theory, the officer would be entitled to enter the house, find him, and then drag him out and arrest him? I mean, he doesn't need an arrest warrant, doesn't need a search warrant? I mean, are you limiting your thing to just grabbing distance? Are you saying that once somebody retreats into their own home, after they've been told they're under arrest, the police therefore have a license to enter the home and arrest without a warrant? Well, it's not quite clear to me how far the Santana case allowed them to go. But I would say you can certainly reach in and grab, because they did at least as much, if not more, in the Santana case. Now, you don't want to get to the point where we've got the Payton case, where they stroll into the house and only then do they spot their suspect and go across the room and get him. I'm asking you where to draw the line, because if we adopted your theory, we'll have the next case. I'm saying that under Santana, you can do at least as much as reach in to the vestibule or the entranceway, which is what at least happened in the Santana case. Into the house is what you want to do in this case. Reaching, yes. I think you should reach in. All right. Does that make any sense? I mean, why should we make that the law of the Fourth Amendment? Because I think, one, that's what the Supreme Court has indicated should be the law of the Fourth Amendment. Where? In the Santana case. You can reach in. In Santana, she was in the vestibule. She had drugs. She retreated into the house. They got out of the car and said, police, stop. And then she went into the house. That was undisputed. And she had drugs, so they had pursuit and destruction of evidence. And it seems pretty clear to me, the Supreme Court has made clear in Santana, that when you retreat into a house to hide evidence or destroy evidence, the police surely, if they announced it before, can do it. Here, he's not on the threshold. He's back from the threshold. He's not destroying evidence. And there's a dispute whether he turned to leave before the officer ever said anything. I just can't see the difference between the six inches inside the threshold of the ajar door and the woman in the threshold. He could have been standing right outside. If he turns to leave before the officer says anything and walks into his house, an officer can't say you're under arrest and reach and grab you. Correct. I would agree with that. But I don't think that's the situation here. I think the Santana case makes it clear that you can do what the officer did in this case. And I would point out that in the other Eastern District case, Judge Duggan, that Musdorff, I guess is how you would pronounce it, versus Crott, clearly seems in line with this case and allows it. And then Judge Ludington in this case. Now, Judge Duggan and Judge Ludington both interpreted Santana this way. How can you hold an officer to think he should interpret it differently? That gets into the clearly established situation. Now, this court may say that, you know, we're going to draw the line at that threshold. The six inches was too much. We're going to draw the line. And this court can do that in this case, but that doesn't make it clearly established for the purposes of what he did. Unless it was clearly established in Stoneburner. I mean, if it was there, that was six months before this incident. Could I ask a couple questions about malicious prosecution? Sure. Could you briefly address the malicious prosecution claim? Well, one, I think our primary argument from Officer Sierras is that his report only identifies Junior as a suspect. That's who he went there to arrest, permissible under the Michigan statute for a PPO violation, warrantless arrest. And the plaintiffs explain in their own complaint all the investigation he went through leading up to that. He didn't just arrive ignorantly. He knew what was going on. And it was admitted, and there was a conviction. But he only identifies Junior as a suspect. He talks about in his report that his perception was, and the judge said this was reasonable, his perception was that Junior was being tried to escape or being pulled in by Senior or perhaps the mom. But he didn't make him a suspect on his report. And there's no evidence that his report was the one that was relied on by the affidavit of the prosecutor. The affidavit of the prosecutor says flat out, I am looking at the Essexville report, where Senior was identified. Wouldn't that be delved into at the trial, though, as to the extent of the police involvement in the prosecution and in initiating the prosecution? All those things would have been presented at trial. Right. And it's a question of we don't know what role he had. There's no evidence, evidence, he says, in the Free v. Franklin County case. There has to be evidence from which to presume or to determine that he was involved in the initiation of the prosecution. He's just dragged in as a witness after the fact. Well, tell us what you saw. That's not part of malicious prosecution. Malicious prosecution is that you work toward the decision to prosecute. And that's what's missing in this case is evidence that Sierras had any role or was used by the prosecutor in any measure to make the decision to prosecute. And I see my time is up. I don't want to cramp my colleague. All right. Thank you. Thank you very much. Good morning, Your Honors. Josephine DiLorenzo on behalf of Defendant Charteau. To the extent I need to address the illegal entry claim, I didn't see that plaintiff made any specific arguments as to Sergeant Charteau. And it must be assessed individually in a 1983 action. We seem to be in agreement that there were exigent circumstances from his perspective. He saw Sierras go in to effect the arrest, and Brene, Jr. started resisting. Brene, Sr. was interfering. Maybe you should deal with the malicious prosecution claim. Okay, that comes down. Before you get into that, what were the exigent circumstances? I'm not sure I see any exigent circumstances. Well, there was a struggle going on in front of him. And so, you know, there were three people. There were four people in a crammed area. There was a struggle. I don't think he should have had to wait on the front porch to, you know, before someone's head got bashed in or someone reached for a gun. I think it was okay for him to go in. So his exigent circumstances are different than Sierra's is what you're saying? Oh, correct, yes. My officer, he was the second one in. You thought somebody's safety was in danger and the people in the house might have gone for a gun. Is that what you're claiming? Well, anything could happen. I mean, there was a struggle going on in a small area, and there were four people. Well, I mean, on these facts, I think it's stretching things. But go ahead. Well, I guess maybe. But from his perspective, it's from his perspective on the scene. Whose perspective? From Officer Chateau on the scene. He's the second. He's standing on the porch. He's watching what's going on in front of him. He's seeing a struggle. I think it was best for everyone that he went in and helped effect the arrest so that it would be over as soon as possible and no one would be injured. Should I? You can proceed with your argument. Okay. Well, with respect to malicious prosecution, obviously our position is that there was probable cause to arrest Brene Sr. for obstructing a police officer who was performing his duties, and that's already been determined. So can I ask you that? So Sierras and Chateau, again, I separate out. And Chateau's standing out on the porch observing what's going on. So take the plaintiff's facts. The plaintiff testifies, I shut the door before anything happened. Then when he came in, he rammed into me, I slipped and fell, and as I was falling, I grabbed his arm. Now, it's one thing for Sierras in the heat of the interaction, not to appreciate and understand what's going on. That seems perfectly reasonable to me in a malicious prosecution type case. If Chateau is outside observing this and you take the plaintiff's version of facts as true, why isn't his police report completely false, and thus why doesn't it support a malicious prosecution claim? Well, I think that what he said in the police reports and at the preliminary examination isn't so far off the mark because Brene Senior, well, as you just said, he admitted that he started to fall and he grabbed somebody's arm. He doesn't know who it is. And so at the preliminary examination, Sergeant Chateau said, Brene Senior tried to close the door and also was pushing on Officer Sierras to get him to let go of his son. That's not such a big difference. He did also say that Brene Senior tried to get in between them. I mean, that could just be because everyone was jostling around. So I don't think it's so far off the mark. The actual police report was somewhat different. Again, it mentioned trying to get in between the son and the officer and push the son back in the house. But even from standing outside, if everyone's jostling around, I mean, that's not so, again— What did the police report, though, say? I thought the police report was significantly different than that. Let's see. Dennis Senior was trying to get in between his son and the officers, trying to push his son back into the house at one point, and then trying to push Officer Sierras away from him some moments later. That was in the Essexville report. So if that's contrary to— and I know you say he just signed it, he didn't prepare it, but he signed and approved it. If that's contrary to his own preliminary examination testimony, so he uses that to get the arrest warrant, and it's contrary, or at least the preliminary examination seems more accurate, can't we use his own words to say at least this should go to the jury as to him? I don't believe so because the judge was making the determination at the preliminary exam, and he relied on that testimony. There doesn't seem to be any evidence, at least the pages of the transcript that were in the record, if the prosecutor maybe used some of those other statements that were in the police report. I know there's been a lot of malicious prosecution cases lately, but there's a case, Pete v. City of Detroit, where it says that plaintiffs have shown that the state judge in the preliminary exam relied on false information to determine that probable cause existed. So it didn't matter what was in the police report. It was what he saw at the preliminary exam. Can I ask you about that? Because I'm not sure I'm clear, so maybe you can clear it up. So what you're saying is, I get it. If the officer testifies consistently, and by all accounts honestly, at the preliminary exam, and the judge makes a probable cause determination, he's immune from malicious prosecution on that. But what about on the arrest? Because we've said, so what I understand was used, and tell me if I'm wrong, in support of the arrest warrant was his police report. Correct. And so we've arrested Brene Senior, and I understand that if you use false information to get an arrest, that can support a malicious prosecution claim. Am I wrong? No, that's correct. But I don't see that this was entirely false to the level it needs to be to support a malicious prosecution claim. What is entirely false to the level? What does that mean? I'm sorry? What does what you just said mean in legal terms? In other words, how do we effectuate that as a rule of law to give officers clear guidance? Well, I guess you're going to give us the clear rule of law, but I'm just looking at other cases. What I cited in my brief, the sort of egregious misrepresentations that you need to have. So I discussed Sykes v. Anderson. I mean, those were blatant falsehoods. In that case, the plaintiffs had been accused of false report of a felony because it was a robbery. It was an armed robbery, but they thought it was an inside job. So this court went through and pointed out in the police report all the discrepancies, and they were wildly inaccurate. I think the biggest thing this court focused on was, well, there was an armed robbery, and the police report neglected to mention the actual presence of the armed robbers. And then I think it was a case that plaintiffs cited in their brief, King v. Harwood, that had all sorts of egregious misrepresentations on ballistics evidence in a murder trial. So this who is pushing whom when there's all these people in the melee, I don't think it rises to that level, but I guess you will tell us. And I guess my time is almost up unless you have any other questions. Apparently not. Thank you. Any rebuttal? The evidence presented to the trial judge showed that this was a very narrow hallway, and photographs were submitted, and they're referenced in Record Entry 32, page ID 493. That's important. When you look at that picture, you can see that this hallway is very narrow. You'll see Mr. Brunet, Sr. standing like this, from your perspective, standing like this, but you'll be able to tell that there's a wall that's essentially not much wider than the front door because you'll see a mirror hanging there. So that's very important. Number two, Sierra's police report references Sr. all over the place. It's found at, among other places, Record Entry 33, page ID 517. The reference to Moosdorf is, I think, disingenuous because in the Moosdorf case, which was apparently issued or written by Judge Duggan and relied upon by Judge Ludington, that was absolutely a hot pursuit case. This was a guy that failed to stop his car, drives into his driveway, runs into the house, and comes out a few times. So that is a hot pursuit case, and that's not what happened here. Mr. Gloeb, I guess before you move on. In my answer to the motion— Mr. Gloeb, before you move on, why is it significant that it's a narrow area? Because the claim is that he physically pulled the junior away from the officers, and in my initial presentation, you asked me questions about malicious prosecution, and couldn't one of the officers have thought that because there was contact that that would be malicious? And the hallway supports that. Supports what? That it's more likely they had contact? That it wasn't intentional because there was a— But isn't the fact that it's a narrow space, there's a lot of people there, and there's all this confusion that it's reasonable for the officers to think it's intentional? No, sir, I don't. And there is a Sixth Circuit case that, unfortunately, I left on my— I mean, I think it goes both ways. Well, there's a Sixth Circuit case that this court affirmed, either affirmed a denial of summary judgment or reversed it when it was granted because the evidence could show that the woman may have accidentally touched the arm rather than intentionally. Well, I mean, we're not adjudicating the facts. We're determining whether the officers deliberately made falsehoods in their police reports, not that they were wrong about the facts. I mean, if they're wrong about the facts, that's not a cause of action for Melissa's prosecution. You've got to establish intent. I believe it doesn't show reckless disregard or intentional misstatement by claiming that— But if their perceptions are reasonable for the officers, then I don't know how you go to the jury and to say, well, ladies and gentlemen of the jury, I want you to find that they deliberately falsified the reports when you don't have any evidence of that. Well, probable cause, as you know, is a jury question unless there's only one version that could be accepted in view of the statements made. Well, not everything's a jury question. You've got to have a threshold. You've got to get a threshold of evidence to get to the jury. And I think I have. And a judge will not allow something to go to the jury if no reasonable juror could so rule. If the jurors are only allowed to speculate, guess, that's not a jury question. I think that a reasonable jury could believe that this prosecution and the warrant for Senior's arrest was issued on the statements of both officers that Senior interfered by pulling back or getting in between Junior and the officers. That was such an unreasonable perception that it could not have been true. No reasonable officer could have so perceived what they put in that report. On these facts, it did not happen. Well, whether it happened or not's not the issue, but your argument is no reasonable officer could possibly have such a perception. So it must be a falsehood, right? No, sir. I apologize. This is how Mr. Brene walks. You would see him for a nanosecond and recognize that he's got serious health issues. To suggest that he's in a tug-of-war is ridiculous. I would like to also respond to another question that was asked. There's a case that was cited in my answer to the motion for summary judgment, Goodwin v. City of Painesville, 781 Fed 3, 314, a Sixth Circuit 2015 case. Although the case came down in 2015, the incident occurred in 2010. And in that case, the officers tried to charge someone with obstruction for failing to exit the home when ordered to do so. And the court, this circuit rejected that based upon the Fourth Amendment right to remain in the home. You might want to wrap up. Your red light's been on for a while. I thank you for my opportunity for rebuttal. I'm happy to answer whatever other questions you have. Otherwise, thank you very much. Can you just give me the page site? I'm sorry, 781 F 3rd. 314. Thank you. Thank you. It was referenced in my answer to the motion at Record Entry 40, page ID 563. Here's the quote. You don't have to give the quote as long as we have the citation. Thank you. Thank you very much. The case is submitted.